CARNEY *v.* LOVEDAY.

ADVERSE POSSESSION—GRANTOR AND GRANTEE.

Evidence *held*, insufficient to show that grantor or his privies under warranty deed had ever acquired adverse possession from grantee or his privies where grantor had never notoriously asserted claim of title to all of land conveyed and portion of land had been used by a successor of grantee for railroad purposes without protest from grantor or his privies.

Appeal from Charlevoix; Gilbert (Parm C.), J. Submitted June 1, 1934. (Docket No. 66, Calendar No. 37,571.) Decided October 1, 1934.

Bill by Mark Carney and others against W. Asa Loveday and Michigan Central Railroad Company to quiet title to land. Disclaimer filed by defendant

company. Decree for plaintiffs. Defendant Loveday appeals. Reversed.

*E. N. Clink* (*C. M. Bice,* of counsel), for defendant Loveday.

FEAD, J. Plaintiffs had decree quieting title by adverse possession. The testimony was not as certain, in some respects, as it could have been and, as the conveyances described the premises by metes and bounds and no maps were presented, some facts must be stated rather indefinitely.

John H. Carney owned a farm, government lot No. 1, touching the south arm of Pine Lake (Lake Charlevoix) in Charlevoix county. In 1896 he conveyed to David Ward of Detroit, for $500, a strip along the lake shore, by ordinary warranty deed, describing the land by two metes and bounds descriptions, north and south respectively of a quarter line road. The property is also intersected by the East Jordan and Charlevoix highway running northwesterly. This highway once ran along the water's edge but (time not disclosed) was later rebuilt some distance (not shown) from the shore.

Ward was a lumberman and purchased for railroad and docking purposes but did not carry out his plans. He died. In 1901 his representatives conveyed part of the premises to the Detroit & Charlevoix Railroad Company, evidently a Ward enterprise. In 1907 the railroad company executed conveyance of some premises back to the trustees of Ward's will and, in 1916, conveyed to the Michigan Central Railroad Company all its land in Charlevoix county, probably including a right of way on this land. In 1912 the Ward trustees conveyed to the Ward heirs and in 1924 the latter conveyed to de-

fendant Loveday, who purchased in reliance on the records and without notice of adverse claims. Defendant railroad company has disclaimed interest.

Since 1896, lot 1 has been in possession of the Carney family in the same manner as before the conveyance. Probably about 1906 to 1908 railroad tracks were laid on the parcel south of the quarter section road and they remained until 1918 or later, when the rails and ties were removed. We do not know how long the tracks were in actual use. The Carneys made no protest or claim of title when the tracks were built, used or taken up. In fact they never gave notice or made claim of title to Ward or any of his successors in interest until 1926 or 1927, when a controversy arose with Loveday. Nor does the testimony indicate that they made claim of title to anyone nor that Ward or his successors had knowledge, or occasion for knowledge or notice, that they claimed title.

There was no evidence that the Carneys had actual possession of the premises south of the quarter line road. Its use for railroad purposes is conclusive that they never had exclusive possession and, the use being without protest or claim of title by them, that they never had adverse possession. Their claim of title must be confined to the parcel north of the road.

John Carney died in 1911. In 1912 Mark Carney fenced the north parcel, built a house and dug a well on it. He lived there about seven years, removed the house and has abandoned the well but has used the premises for pasturing purposes since. His fence ran along the west side of the East Jordan road and when the road was moved back from the shore he moved the fence.

The Carneys paid taxes on lot 1, except when exempted to Mrs. Carney as soldier's widow's home-

stead. In assessing lot 1 the premises at bar were not excepted by the supervisor. On .motion for rehearing defendants produced records to show that the premises at bar had also been assessed separately for many years and the taxes paid by the Ward estate, but the rehearing was denied. Defendants ask consideration of such evidence but, in view of our disposition of the case, we need not pass upon the request.

The case must be disposed of under the rule that, before possession of a vendor becomes adverse to the title of his vendee, the vendor shall explicitly disclaim the right of the vendee and notoriously assert right in himself. *Michigan Air Line R. Co.* v. *Hustina,* 255 Mich. 418; *Hogan* v. *Egyptian Portland Cement Co.,* 257 Mich. 381.

Decree reversed and bill dismissed, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.